# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| | | |
|---|---|---|
| Case No. | CV 04-5593-GAF (RNBx) | Date December 16, 2005 |
| Title | In re American Mutual Funds Fee Litigation | |

Present: The Honorable **GARY ALLEN FEESS**

| Marilynn Morris | None | N/A |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

Attorneys Present for Plaintiffs:  Attorneys Present for Defendants:

None  None

**Proceedings:** (In Chambers)

### ORDER RE: MOTIONS TO DISMISS

DOCKETED ON CM
DEC 16 2005
BY [initials] 007

#### A. BACKGROUND AND SUMMARY

Plaintiffs, shareholders in 19 mutual funds from the American Fund family of funds, bring this securities class action against all 29 funds in the family ("nominal defendants"), several directors of the funds ("director defendants"), American Funds Distributors, Inc. (referenced as "American Funds" or "the distributor defendant"), the distributor's parent company, Capital Research and Management Company, which acted as the investment advisor to the various funds ("the investment advisor defendant"), and Capital Group Companies, Inc. ("Capital Group"), the parent of the investment advisor defendant and the distributor defendant. The claims presented are set forth in the Consolidated Amended Complaint ("CAC") filed by Plaintiffs after several lawsuits were consolidated into the present action.

According to the CAC, the named defendants generate income from investors in the various funds by charging management fees, including at least some fees that are computed as a percentage of fund assets. To increase fund assets, and hence their fee income, defendants allegedly paid hundreds of millions of dollars to various brokerage firms to push investors into buying mutual funds offered by American Funds. Because, according to Plaintiffs, the scheme had the desired effect of increasing the asset base against which the fees were computed, both the brokers and the defendants made money, all at the expense of unwitting investors from whom this scheme had been concealed. Plaintiffs contend that the scheme alleged in the CAC violates various provisions of the Investment Company Act of 1940 ("ICA") and the Investment Adviser Act of 1940 ("IAA"), and bring several related state law claims.

Defendants now move under Rule 12(b)(6) to dismiss all causes of action for failure to state a claim. Under the usual standard, the Court assumes the truth of the allegations set forth in the complaint

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No. CV 04-5593-GAF (RNBx)     Date December 16, 2005

Title    In re American Mutual Funds Fee Litigation

---

(Kelson v. City of Springfield, 767 F.2d 651, 653 (9th Cir. 1985)), and determines whether the facts establish a basis upon which relief can be granted under the theories articulated in the CAC. Conley v. Gibson, 355 U.S. 41, 45-46 (1957). Starting with the threshold question of standing, the Court takes up the issues presented in the pending motions.

**B. DISCUSSION**

*1. Standing*

Plaintiffs are investors in 19 of 29 American Funds mutual funds. Defendants contend that these Plaintiffs lack standing to assert claims with respect to the 10 funds in which none of them have any interest. The Court agrees and concludes that Plaintiffs have no standing to bring any claim against any defendant arising out of conduct relating to these 10 funds. Accordingly, the Court concludes that all of Plaintiffs' claims with respect to these funds, and these ten nominal defendants, should be **DISMISSED**.

A number of the claims must be brought derivatively, if at all. Federal Rule of Civil Procedure 23.1 requires a plaintiff in a derivative action to allege that he was a shareholder of that entity at the time of the transaction of which he complains. Fed. R. Civ. P. 23.1.[1] Based on the clear language of Rule 23.1, Plaintiffs cannot bring derivative claims on behalf of any of the ten funds in which they own no interest. See, e.g., Williams v. Bank One Corp., No. 03-C-8561, 2003 WL 22964376, at *1 (N.D. Ill. Dec. 15, 2003); Herman v. Steadman, 50 F.R.D. 488, 489-90 (S.D.N.Y. 1970). Likewise, Plaintiffs lack standing to bring their Section 36(b) claim on behalf of the funds in which they do not own shares. A plaintiff must be "a security holder of such investment company" in order to maintain an action on behalf of that investment company for a violation of Section 36(b). 15 U.S.C. § 80a-35(b); see, e.g., Green v. Nuveen Advisory Corp., 186 F.R.D. 486, 493 (N.D. Ill. 1999).

Moreover, even if Plaintiffs could pursue some of their claims as direct claims, Plaintiffs have suffered no injury in fact through the ten funds in which they do not own shares. See Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992). Traditional standing analysis dictates that these ten nominal defendants should be dismissed because plaintiffs cannot recover from defendants who caused them no injury in fact. La Mar v. H&B Novelty & Loan Co., 489 F.2d 461, 464 (9th Cir. 1973). Put another way, "a named plaintiff cannot acquire standing by bringing his action on behalf of others who suffered injury which would have afforded them standing had they been named plaintiffs; it bears repeating that a person cannot predicate standing on injury which he does not share. Standing cannot be acquired through the back door of a class action." Allee v. Medrano, 416 U.S. 802, 828-29 (1974) (Burger, C.J., concurring in part and dissenting in part) (citations omitted); O'Shea v. Littleton, 414 U.S. 488, 494-95

---

[1] In this order the Court does not discuss the derivative nature of either the ICA or the state law claims because the Court concludes that threshold questions regarding private rights of action (regarding the First and Second Claims) and SLUSA preemption of all state law claims moot the question of the nature of the claims.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 04-5593-GAF (RNBx) | Date | December 16, 2005 |
|---|---|---|---|
| Title | In re American Mutual Funds Fee Litigation | | |

(1974).

### 2. The First and Second Claims For Relief Afford No Private Right of Action

The first two claims for relief assert violations, respectively, of Sections 34(b) and 36(a) of the ICA. Defendants move to dismiss both claims on the ground that the statute creates no private right of action for alleged violations of either section. The Court agrees and concludes that these two claims should be **DISMISSED WITH PREJUDICE.**

The text of these statutes readily demonstrates that they create no express private right to sue for damages or any other remedy for violations of these two statutory provisions. Plaintiffs therefore argue that they are entitled to proceed under an implied private right to sue. In other words, this Court is being asked to imply a private right of action in the face of Congressional silence.

The implication of private rights of action has largely been abandoned by the federal courts in a series of decisions commencing with Cort v. Ash, 422 U.S. 66, 78 (1975). "Like substantive federal law itself, private rights of action to enforce federal law must be created by Congress." Alexander v. Sandoval, 532 U.S. 275, 285 (2001). Thus, courts may not create private rights of action unless there was contemporaneous Congressional intent to create both a private right of action *and* a private remedy. Gonzaga Univ. v. Doe, 536 U.S. 273, 284 (2002); Sandoval, 532 U.S. at 286. If this Congressional intent is lacking, "a cause of action does not exist and courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute." Sandoval, 532 U.S. at 286-87 (citations omitted).

In determining Congressional intent, the Court looks to: (1) the text and structure of the statute; (2) any "rights-creating" language in the statute; (3) the existence in the statute of an alternate method of enforcement; and (4) the existence of a private right of action in other sections of the statute. E.g., Sandoval, 532 U.S. at 287-90; Olmsted v. Pruco Life Ins. Co. of New Jersey, 283 F.3d 429, 432-34 (2d Cir. 2002). The statutes under discussion contain prohibitions but no "rights creating" language. The statutes provide for enforcement through actions brought by the SEC and contain no reference at all to private rights of action. Finally, another section of the statute, namely Section 36(b), expressly includes a private right of action to enforce claims of breach of fiduciary duty. Each of these factors individually, and as a group, require the Court to draw the inference that Congress did not intend to create a private right to enforce Sections 34(b) and 36(a).

Plaintiffs cite a number of cases that found private rights of action under Sections 34(b) and 36(a), but all were decided before the development in the jurisprudence reflected in Sandoval and its progeny. E.g., McLachlan v. Simon, 31 F. Supp. 2d 731, 737 (N.D. Cal. 1998); Strougo v. Scudder, Stevens & Clark, Inc., 964 F. Supp. 783, 798 (S.D.N.Y. 1997). "Past decisions reflecting judicial willingness to 'make effective [statutory] purpose' in the context of implied rights of action belong to an

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | CV 04-5593-GAF (RNBx) | Date | December 16, 2005 |
| Title | In re American Mutual Funds Fee Litigation | | |

'*ancien regime.*'" Olmsted, 283 F.3d at 434 (quoting Sandoval, 532 U.S. at 287). No federal court since Sandoval, including cases after Jackson v. Birmingham Bd. of Educ.,125 S. Ct. 1497, 161 L. Ed. 2d 361 (2005), has found an implied private right of action under the ICA. See Mutchka v. Harris, 373 F. Supp. 2d 1021, 1026 (C.D. Cal. 2005) (describing this shift in jurisprudence); see, e.g., In re Franklin Mut. Funds Fee Litig., 388 F. Supp. 2d 451, 464-67 (D.N.J. 2005) ("Franklin") (Sections **34(b), 36(a)**); In re Eaton Vance Mut. Funds Fee Litig., 380 F. Supp. 2d 222, 230-31 (S.D.N.Y. 2005) ("Eaton Vance") (Sections **34(b), 36(a), 48(a)**); In re Lord Abbett Mut. Funds Fee Litig., 385 F. Supp. 2d 471, 485-88 (D.N.J. 2005) ("Lord Abbett") (Sections **34(b), 36(a)**); Mutchka, 272 F. Supp. 2d at 1025-27 (Section **36(a)**).

### *3. The Third Claim For Relief Should Have Been Brought Derivatively*

Although Congress did provide a private right of action under Section 36(b), this private right of action is *derivative* in nature rather than direct. The Court concludes that this claim should be **DISMISSED WITH LEAVE TO AMEND** for Plaintiffs' failure to plead it as a derivative claim.

Under Section 36(b), "[a]n action may be brought . . . by the Commission, or by a security holder of such registered investment company *on behalf of such company*." 15 U.S.C. § 80a-35(b) (emphasis added). The Supreme Court has held that demand is not required under Section 36(b), but claims under Section 36(b) are still *derivative* claims. Daily Income Fund, Inc. v. Fox, 464 U.S. 523, 534-35 & n.11 (1984); Olmsted, 283 F.3d at 433; see Strougo v. Bassini, 282 F.3d 162 (2d Cir. 2002); Lapidus v. Hecht, 232 F.3d 679, 682 (9th Cir. 2000); Tooley v. Donaldson, Lufkin, & Jenrette, Inc., 845 A.2d 1031, 1039 (Del. 2004).

The source of confusion on the nature of Section 36(b) is one sentence in Kamen v. Kemper Fin. Servs., Inc., 500 U.S. 90, 108-09 (1991). In Kamen, the Court called a Section 36(b) claim "direct." However, the Court added *in the very next sentence* that "it can hardly be maintained that a shareholder's exercise of his state-created prerogative to initiate *a derivative suit without the consent of the directors* frustrates the broader policy objectives of the ICA." Id. at 108 (emphasis added). The Court's reference to Section 36(b) claims as "direct" was not meant to undo Daily Income Fund or the text of the statute. In fact, "the statement [in Kamen] appears to state no more than the incontestable proposition that a shareholder may bring a derivative claim under § 36(b) directly, meaning without making a precomplaint demand pursuant to Rule 23.1." Franklin, 388 F. Supp. 2d at 468 n.12. Accordingly, claims under Section 36(b) must be brought derivatively.

For purposes of amendment, the Court notes that plaintiffs must allege specific facts regarding the disproportionately high nature of the fees in question. See Gartenberg v. Merrill Lynch Asset Mgmt., Inc., 694 F.2d 923, 928 (2d Cir. 1982), cert. denied, 461 U.S. 906 (1983); Migdal v. Rowe Price-Fleming Int'l, Inc., 248 F.3d 321, 329 (4th Cir. 2001). Plaintiffs should be guided by the discussion in these cases.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | CV 04-5593-GAF (RNBx) | Date | December 16, 2005 |
| Title | In re American Mutual Funds Fee Litigation | | |

In addition, the Court concludes that Count Three should be **DISMISSED WITH PREJUDICE** as to conduct before July 15, 2003 because of the explicit one-year statute of limitations in Section 36(b). 15 U.S.C. § 80a-35(b)(3); see, e.g., Liaros v. Vaillant, No. 93 Civ. 2170 (CSH), 1996 U.S. Dist. LEXIS 2292, at *38-*41 (S.D.N.Y. Feb. 28, 1996).

Finally, the Court also concludes that Count Three should be **DISMISSED WITH PREJUDICE** as to the director defendants because their benefit, if any, from the scheme was indirect. (See CAC ¶¶ 192-199); 15 U.S.C. § 80a-35(b)(3). Based on its explicit language, Section 36(b) does not apply to defendants who have received only indirect benefits from improper fees. See Eaton Vance, 380 F. Supp. 2d at 238; Green, 186 F.R.D. at 492; In re TCW/DW N. Am. Gov't Income Trust Sec. Litig., 941 F. Supp. 326, 343 (S.D.N.Y. 1996).

### *4. The Fourth Claim For Relief Requires A Predicate Violation of the ICA*

Section 48(a) imposes liability on those who allegedly controlled a person liable under the ICA. See 15 U.S.C. § 80a-47(a). Because Plaintiffs have failed to state a claim under Sections 34(b), 36(a), and 36(b), the Court concludes that this count should be **DISMISSED BUT WITH LEAVE TO AMEND**. See In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig., 272 F. Supp. 2d 243, 255-59 (S.D.N.Y. 2003). The permission to amend is limited to any claim under Section 48(a) that Plaintiffs believe they can plead in view of the limits placed on their amendment of the claim under Section 36(b).

### *5. The Fifth Claim For Relief Requires Adequate Pleading of Demand Futility*

#### a. The IAA Claim Has Been Properly Pled as a Derivative Claim Under Applicable State Law

Plaintiffs assert a derivative claim under Sections 206 and 215 of the IAA. The Court agrees that state law governs the question of whether a claim is direct or derivative, Kamen, 500 U.S. at 108-09; Lapidus v. Hecht, 232 F.3d 679, 682 (9th Cir. 2000), and that the claims here asserted are derivative under the law of Maryland, Massachusetts, and Delaware, where the funds are organized. See, e.g., O'Donnell v. Sardegna, 646 A.2d 398, 401-03 (Md. Ct. App. 1994); Waller v. Waller, 187 Md. 185, 189-92 (1946); Lapidus, 232 F.3d at 682-83; In re Syncor Int'l Corp. Shareholders Litig., 857 A.2d 994, 996 (Del. 2004). "[A] complaint alleging mismanagement or wrongdoing on the part of corporate officers or directors normally states a claim of wrong to the corporation: the action, therefore, is properly derivative." Jackson v. Stuhlfire, 547 N.E.2d 1146, 1148 (Mass. Ct. App. 1990) (citations omitted). A claim that the assets of a mutual fund have been depleted through mismanagement or other wrongdoing is one that should be brought derivatively. See Kauffman v. Dreyfus Fund, Inc., 434 F.2d 727, 733 (3d Cir. 1970). Having reached that conclusion, the Court must next address whether a demand must be made on the funds' boards of directors prior to bringing suit.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | CV 04-5593-GAF (RNBx) | Date | December 16, 2005 |
| Title | In re American Mutual Funds Fee Litigation | | |

### b. State Law Governs the Demand-Futility Issue

State law also governs the requirements for demand. Kamen, 500 U.S. at 108-09; Lapidus, 232 F.3d at 682. Plaintiffs did not make demand on the funds' boards of directors before filing this action, (see CAC generally & ¶ 169), and have failed adequately to plead demand futility as to any state in which the funds are organized.

### c. Massachusetts Requires a Demand in Every Case

In Massachusetts, demand is statutorily required before commencement of a derivative suit on behalf of a Massachusetts organization. Mass. Gen. Laws ch. 156D, § 7.42. The universal demand requirement took effect on July 1, 2004. Since Plaintiffs filed the initial complaint in this case after this date, demand was required. "There are no exceptions." ING Principal Prot. Funds Derivative Litig., 369 F. Supp. 2d 163, 170 (D. Mass. 2005) ("ING").

Plaintiffs maintain that this universal demand requirement applies only to corporations and does not apply to business trusts such as the funds. The Court concludes, however, that the demand requirement applies also to business trusts because "a business trust 'in practical effect is in many respects similar to a corporation.'" ING, 369 F. Supp. 2d at 171 (citations omitted). Often the rules governing suits involving corporations apply also to those involving business trusts, and Plaintiffs have presented no persuasive authority for treating business trusts differently under present circumstances. See, e.g., Green, 186 F.R.D. at 489 n.2; Clairdale Enters., Inc. v C.I. Realty Investors, 423 F. Supp. 257, 261 (S.D.N.Y. 1976); Greenspun v. Lindley, 330 N.E.2d 79, 81 (N.Y. 1975). On this ground, the Court concludes that the IAA claim as to the Massachusetts funds should be **DISMISSED WITH PREJUDICE**.

### d. Maryland and Delaware Require Demand or Pleading of Demand Futility

In Maryland, a derivative plaintiff must make a demand or plead demand futility. The futility exception is "a very limited exception, to be applied only when the allegations or evidence clearly demonstrate, in a very particular manner, . . . that . . . *a majority of the directors are so personally and directly conflicted or committed to the decision in dispute that they cannot reasonably be expected to respond to a demand in good faith and within the ambit of the business judgment rule.*" Werbowsky v. Collomb, 766 A.2d 123, 144 (Md. Ct. App. 2001). In Delaware, demand is only excused where "a plaintiff has alleged facts with particularity which, taken as true, support a reasonable doubt that the challenged transaction was the product of a valid exercise of business judgment." Aronson v. Lewis, 473 A.2d 805, 815 (Del. 1984), overruled on other grounds by Brehm v. Eisner, 746 A.2d 244 (Del. 2000).

Plaintiffs' "bald conclusion that a majority of the board is interested" is not enough. Franklin,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | CV 04-5593-GAF (RNBx) | Date | December 16, 2005 |
| Title | In re American Mutual Funds Fee Litigation | | |

388 F. Supp. 2d at 470. In addition, Plaintiffs' arguments that demand would have been futile, both individually and collectively, fail. (See CAC ¶¶ 169-177). Appointment of directors by the adviser is especially insufficient to excuse demand where shareholders have the right to vote out directors. Werbowsky, 766 A.2d at 143; Aronson, 473 A.2d at 816; (see CAC ¶¶ 112-170). Approval of the questioned actions, and the desire to increase the size of the mutual fund, are also insufficient to excuse demand. See Solomon v. Armstrong, 747 A.2d 1098, 1126 (Del. Ch. 1999); Werbowsky, 766 A.2d at 143-44; Aronson, 473 A.2d at 814. Moreover, the fact that directors would have to sue themselves and their friends and colleagues does not excuse demand. See Brehm, 746 A.2d at 257 n.34; Werbowsky, 766 A.2d at 143, 145-56; (see CAC ¶ 177).

Likewise, "[c]ourts have unanimously held" that service on multiple boards in the same fund family and receipt of substantial compensation for being a director do not establish demand futility. Krantz v. Prudential Invs. Fund Mgmt. LLC, 77 F. Supp. 2d 559, 563 (D.N.J. 1999) (citations omitted); see Grobow v. Perot, 539 A.2d 180, 188 (Del. 1988); Scalisi, 380 F.3d at 140-41; (see CAC ¶¶ 113, 170, 175-176). Claims like Plaintiffs' claims to establish interestedness have been rejected where directors were members of many more funds' boards and received far more substantial compensation than is at issue here. See,e.g., Krantz v. Fidelity Mgmt. & Research Co., 98 F. Supp. 2d 150, 155-57 (D. Mass. 2000); Scalisi, 380 F.3d at 136, 142; Franklin, 388 F. Supp. 2d at 457; (see CAC ¶¶ 42-50, 175).

Plaintiffs' allegations, therefore, do not establish interestedness or excuse demand in Maryland or Delaware. Even the combination of these factors, moreover, does not establish lack of independence. See Werbowsky, 766 A.2d at 143-44 (rejecting comparable combination of factors); Eaton Vance, 380 F. Supp. 2d at 239-40 (same).

Based on the foregoing, the Court concludes as follows:

(1) The claims against the Massachusetts funds are **DISMISSED WITH PREJUDICE** for failure to comply with the demand requirement.

(2) The claims against the Maryland and Delaware funds are **DISMISSED WITHOUT PREJUDICE AND WITH LEAVE TO AMEND.**

### e. Statute of Limitations

In addition, the Court concludes that the IAA claim should be **DISMISSED WITH PREJUDICE** as to conduct before July 15, 2001. Following the analysis in Kahn v. Kohlberg, Kravis, Roberts & Co., 970 F.2d 1030 (2d Cir. 1992), the Court concludes that the applicable statute of limitations is "one year from the discovery/three years from the wrong." Id. at 1039. Plaintiffs suggest that the Court should apply equitable tolling and rely on Admiralty Fund v. Peerless Ins. Co., 143 Cal. App. 3d 379, 389 (Ct. App. 1983). However, the Supreme Court has stated that "the equitable tolling

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 04-5593-GAF (RNBx) | Date | December 16, 2005 |
|---|---|---|---|
| Title | In re American Mutual Funds Fee Litigation | | |

doctrine is fundamentally inconsistent with the 1-and-3-year structure." Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson, 501 U.S. 350, 363 (1991); see Munoz v. Ashcroft, 339 F.3d 950, 957 (9th Cir. 2003). Accordingly, the amended pleading must address only claims arising after July 15, 2001.

### 6. *The State-Law Claims For Relief Are Preempted under SLUSA*

Plaintiffs bring state law claims for breaches of fiduciary duty; aiding and abetting a breach of fiduciary duty; violation of California Business and Professions Code Section 17200; and unjust enrichment. Defendants argue that these claims are preempted under the Securities Litigation Uniform Standards Act of 1998, 15 U.S.C. §§ 77p(b), 78bb(f)(1) ("SLUSA"), because they are inextricably related to the purchase and sale of securities. The Court agrees, and concludes that the Sixth through Tenth Claims for Relief should be **DISMISSED WITH PREJUDICE**.

Under SLUSA, a state-law claim must be dismissed if it is a claim in: (1) a covered class action; (2) based upon state common or statutory law; (3) concerning a covered security; (4) involving any manipulative or deceptive device or contrivance; (5) "in connection with the purchase or sale of a covered security." 15 U.S.C. §§ 77p(b), 78bb(f)(1). The Court addresses the only dispute on this issue, namely whether the claims are "in connection with the purchase or sale" of covered securities.

Plaintiffs maintain that because they styled the CAC as being on behalf only of those who "*held* shares, units, or like interests" in any of the funds during the class period, SLUSA preemption does not apply. (See, e.g., CAC ¶ 162 (emphasis added)). Despite this wording, the scheme at issue in this case falls squarely within the scope of actions that Congress intended to take control of through SLUSA and the Private Securities Litigation Reform Act of 1995, in the first instance. "It is well-established that an artfully drafted complaint cannot circumvent SLUSA preemption." Franklin, 388 F. Supp. 2d at 473 (citations omitted).

The Ninth Circuit has focused on the Supreme Court's holding in SEC v. Zandford, 535 U.S. 813 (2002), in assessing the scope of SLUSA because SLUSA's language is "nearly identical" to that of Section 10(b) of the Securities Exchange Act of 1934. Falkowski v. Imation Corp., 309 F.3d 1123, 1129 (9th Cir. 2002). In Zandford, the Court indicated that Section 10(b) "should be 'construed not technically and restrictively, but flexibly to effectuate its remedial purposes." 535 U.S. at 819 (internal quotation marks omitted). The Ninth Circuit concluded that "SLUSA should also be viewed as part of the remedial package of federal securities laws and should be construed accordingly." Falkowski, 309 F.3d at 1129.

On this basis, fraud "is in connection with the securities transaction if it '*coincides*' with the transaction." Id. at 1130 (quoting Zandford, 535 U.S. at 825) (emphasis added). The Falkowski court equated the "coincides" language with the language in a previous Ninth Circuit case, which explained that such fraud "must have *more than some tangential relation to the securities transaction.*"

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | CV 04-5593-GAF (RNBx) | Date | December 16, 2005 |
| Title | In re American Mutual Funds Fee Litigation | | |

Ambassador Hotel Co. v. Wei-Chuan Inv., 189 F.3d 1017, 1026 (9th Cir. 1999) (emphasis added); Falkowski, 309 F.3d at 1130-31. The court held in Falkowski that concealment of an impending accounting write-off was a misrepresentation about the value of options that "easily" met the Zandford/Ambassador Hotel standard for SLUSA preemption. Falkowski, 309 F.3d at 1131. Plaintiffs' claims here likewise meet this standard.

The impact of a scheme "*coincides*" with the purchase or sale of securities where the essence of that scheme was tied directly to the purchase of securities. That is plainly the case here. Here the scheme is this: Defendants paid brokers to induce investors to purchase shares in American Funds mutual funds, and used the proceeds of the earnings from those funds to fund the payments to the brokers. Accordingly, the scheme, at the very least,

– motivated brokers to push the sale of particular investments;

– was done without the knowledge of the investors and so deprived them of information relevant to the evaluation of investment advice; and

– deceived investors about the returns they would earn, depriving them of information that would permit them to compare the wisdom of an investment with American Funds compared to other mutual fund investments.

Thus, the success of Defendants' conduct here necessarily required purchases, indeed increased purchases, of securities. See, e.g., Franklin, 388 F. Supp. 2d at 472, where the court noted, *"absent purchases by 'duped' investors* and a corresponding inflation in the share price," the defendants' scheme would fail. Id. (quoting Rowinski v. Salomon Smith Barney, Inc., 398 F.3d 294, 302 (3d Cir. 2005)) (emphasis added). Accordingly, the Falkowski test is met.

Plaintiffs' reference to Blue Chip Stamps v. Manor Drug Stores, 421 U.S. 723, 754-55 (1975), does not change the outcome. Following Blue Chip, courts regularly dismiss cases where the complaint does not allow the court to distinguish between plaintiffs who held and plaintiffs who purchased *and* held stock. See, e.g., Eaton Vance, 380 F. Supp. 2d at 241; Franklin, 388 F. Supp. 2d at 473. Since this consideration is not part of the Falkowski analysis, it does not detract from the logic of the Falkowski test or from the fact that multiple courts have rejected holder/purchaser distinctions similar to those presented in this case, including in the ICA and IAA context, on the basis of SLUSA preemption. See, e.g., Dabit v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 395 F.3d 25, 28 (2d Cir. 2005); Rowinski, 398 F.3d at 302; Kircher v. Putnam Funds Trust, 403 F.3d 478, 482-84 (7th Cir. 2005); Dudek v. Prudential Secs., Inc., 295 F.3d 875, 879 (8th Cir. 2002); Franklin, 388 F. Supp. 2d at 471-73; Lord Abbett, 385 F. Supp. 2d at 482-85.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | CV 04-5593-GAF (RNBx) | Date | December 16, 2005 |
| Title | In re American Mutual Funds Fee Litigation | | |

### C. CONCLUSION

For the foregoing reasons, the Third, Fourth, and Fifth Claims for Relief, all Claims for Relief with respect to the ten funds in which Plaintiffs do not own shares, and the corresponding nominal defendants, are **DISMISSED**. The First, Second, and Sixth through Tenth Claims for Relief are **DISMISSED WITH PREJUDICE**. In addition, the Third Claim for Relief is **DISMISSED WITH PREJUDICE** as to conduct before July 15, 2003 and the director defendants. The Fifth Claim for Relief is **DISMISSED WITH PREJUDICE** as to conduct before July 15, 2001 and the funds organized in Massachusetts.

Plaintiffs may file an amended complaint on or before close of business on **January 17, 2006**.

**IT IS SO ORDERED.**

_____ : _____

Initials of Preparer