# Exhibit 8

Hubbard-Glenn 3/30/2009 9:07:00 AM

1

2　　　UNITED STATES DISTRICT COURT

3　　　CENTRAL DISTRICT OF CALIFORNIA

4　　　　　WESTERN DIVISION

---

5

6　In Re AMERICAN MUTUAL FUNDS FEE LITIGATION

7

8　CV 04-5593 GAF (RNBx)

---

9

10　　　　　March 30, 2009

　　　　　　9:07 a.m.

11

12

13

14　　　　DEPOSITION of R. GLENN HUBBARD,

15　taken by Defendants, pursuant to Notice,

16　held at the offices of MILBANK, TWEED,

17　HADLEY & MCCLOY LLP, One Chase Manhattan

18　Plaza, New York, New York before Wayne

19　Hock, a Notary Public of the State of New

20　York.

21

22

23

24

25

Hubbard-Glenn 3/30/2009 9:07:00 AM

1       R. Glenn Hubbard

2   is not sharing the economies of scale with

3   its investors for fund B?

4       MR. MURPHY: Objection to form.

5   A.   It doesn't sound like you're

6   giving an equilibrium to me. I don't even

7   know how to answer that question. Sorry.

8   Q.   Based on the paragraph

9   ninety-seven, you state that competition

10  constrains fees even if boards do not

11  negotiate at arm's length. You state

12  there that -- first of all, let me just

13  ask you to give me a distinction.

14      You say that, "I understand that

15  the standard for approving 12b-1 fees is

16  not that the negotiation on the fee be at

17  arm's length but that the fee could have

18  resulted from an arm's length

19  negotiation."

20      I don't really understand what

21  you're getting at there. What is that

22  distinction?

23      MR. MURPHY: Objection to form.

24  A.   Well, true arm's length

25  negotiation is talking with multiple

1    R. Glenn Hubbard

2    people. What could have resulted from an

3    arm's length is a comparison in Lipper

4    tables or the kinds of comparisons I did

5    in the report that it would have likely

6    have been drawn from an arm's length

7    distribution. Those are two different --

8    to an economist, they're the same thing.

9    Q. And then you go on to conclude

10    that "the competitive market would prevent

11    advisers from sustaining excessive fees

12    over time even if mutual fund boards did

13    not."

14    Based on this opinion, do you

15    believe that independent directors are not

16    necessary to the welfare of funds?

17    MR. MURPHY: Objection to form.

18    A. In fact, I've written to the

19    contrary, as you may know. So no.

20    Q. Well, why not if the competitive

21    forces sufficiently force funds to share

22    scale economies and --

23    A. For the reasons that I explained

24    in the paper with Coates, there really --

25    to guarantee the maximum possible speed,

CAPITAL RESEARCH - CORBI    Unsigned    Page 161

Hubbard-Glenn 3/30/2009 9:07:00 AM

1    R. Glenn Hubbard

2    the interaction of boards and competition

3    well protect investors with 36(b) as a

4    third backstop. I referred to it as three

5    legs of the stool.

6    Q.   How does an investor know if a

7    fund is equitably sharing in scale

8    economies?

9        MR. MURPHY: Objection to form.

10   A.   In a competitive market, the

11   investor can assume that as a matter of

12   theory. You could also do the kinds of

13   calculations that I've done here. Any

14   investor could do what I've done.

15   Q.   Do you expect most mutual fund

16   investors to be able to do that type of

17   calculation?

18   A.   Not required. Only, marginal

19   investors or financial advisers do.

20   Q.   Let me just ask you one more

21   question about this.

22       So if no mutual fund can really

23   negotiate at arm's length, how are similar

24   fees charged to peer funds relevant to

25   other mutual funds relevant?

CAPITAL RESEARCH - CORBI          Unsigned                    Page 162

Hubbard-Glenn 3/30/2009 9:07:00 AM

1  R. Glenn Hubbard

2  Q. Related to their end result

3 which is their returns.

4  MR. MURPHY: Why would

5 competition prevent someone from

6 committing fraud?

7  A. Fraud happens in every industry.

8 There's always fraudsters. It has nothing

9 to do with the competitive process.

10  Q. Doesn't that indicate that

11 competition can't be relied upon to weed

12 out excessive fees if an investment

13 advisory firm committed fraud to try to

14 attain excessive fees?

15  MR. MURPHY: Objection to form.

16  A. No.

17  Q. So you mentioned that price

18 reductions, I think you mentioned this in

19 your expert report as well --

20  A. I'm sorry, where are we?

21  Q. This is on page twenty.

22  You state that price reductions

23 is evidence of competition in this paper

24 and I believe that's as well as in your

25 expert report; correct?

CAPITAL RESEARCH - CORBI  Unsigned  Page 182

396

Hubbard-Glenn 3/30/2009 9:07:00 AM

1    R. Glenn Hubbard

2    A.  It's certainly one element, yes.

3    Q.  Couldn't these price reductions

4    also be attributed to the threat of legal

5    action such as under 36(b)?

6    MR. MURPHY: Objection to form.

7    A.  I'm not quite sure. In this

8    very paper, I hold up 36(b) as an

9    important element. I think I refer to it

10    as a three-leg stool. Competition by far

11    is the most important of the three for all

12    the reasons we talked all morning about.

13    Q.  I'm just trying to understand

14    whether it's possible that -- you

15    mentioned that certain funds have waved

16    fees and initiated breakpoints.

17    Isn't it possible that it's more

18    the regulation of 36(b) and the threat of

19    litigation?

20    A.  It would be unlikely. I'm not

21    aware of any successful 36(b) case whereas

22    I am aware that market forces daily

23    discipline firms.

24    Q.  Are you aware of the recent or

25    semi-recent Seventh Circuit decision by

CAPITAL RESEARCH - CORBI    Unsigned    Page 183