GIBSON, DUNN & CRUTCHER LLP
GARETH T. EVANS, SBN 138992
ANDREW Z. EDELSTEIN, SBN 218023
333 South Grand Avenue
Los Angeles, California 90071-3197
Telephone: (213) 229-7000
Facsimile: (213) 229-7520
e-mail: gevans@gibsondunn.com

MILBANK, TWEED, HADLEY &
  McCLOY LLP
JAMES N. BENEDICT, Admitted *Pro Hac Vice*
SEAN M. MURPHY, Admitted *Pro Hac Vice*
JAMES G. CAVOLI, Admitted *Pro Hac Vice*
C. NEIL GRAY, Admitted *Pro Hac Vice*
One Chase Manhattan Plaza
New York, New York 10005-1413
Telephone: (212) 530-5000
Facsimile: (212) 530-5219
e-mail: jbenedict@milbank.com

Attorneys for Defendant
Capital Research and Management Company and
American Funds Distributors, Inc.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| In re AMERICAN MUTUAL FUNDS FEE LITIGATION | CASE NO. CV 04-5593 GAF (RNBx)<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES REGARDING THE COURT'S STATEMENT OF INTENDED DECISION**<br><br>Judge: Hon. Gary A. Feess |

# TABLE OF CONTENTS

                              **Page**

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION ...............................................................................................................1

FACTUAL BACKGROUND ..............................................................................................2

DISCUSSION ......................................................................................................................3

CONCLUSION ..................................................................................................................10

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Bennett v. Fidelity Mgmt. & Research Co., et al.*,
Civil Action No. 04-11651-MLW (D. Mass) ........................................................... 7

*Daily Income Fund, Inc. v. Fox*,
464 U.S. 523 (1984) ................................................................................................. 5

*Gartenberg v. Merrill Lynch Asset Mgmt., Inc.*,
528 F. Supp. 1038 (S.D.N.Y. 1981), *aff'd*, 694 F.2d 923 (2d Cir. 1982) .................. 3

*In re Grand Jury Subpoena*,
274 F.3d 563 (1st Cir. 2001) .................................................................................... 6

*In re Megan-Racine Assocs.*,
189 B.R. 562 (Bankr. N.D.N.Y. 1995) ..................................................................... 7

*Skains v. Lockler*,
No. Civ. S-06-127, 2009 WL 230037, (E.D. Cal. Jan. 20, 2009) ............................. 8

*Strougo v. BEA Assocs.*,
199 F.R.D. 515 (S.D.N.Y. 2001) .............................................................................. 6

*United States v. Bay State Ambulance & Hosp. Rental Serv., Inc.*,
874 F.2d 20 (1st Cir. 1989) ...................................................................................... 7

*Visual Scene, Inc. v. Pilkington Bros.*,
508 So.2d 437 (Fla. Dist. Ct. App. 1987) ................................................................. 8

## STATUTES

15 U.S.C. § 80a-35(b)(2) ................................................................................................. 3

## OTHER AUTHORITIES

*Bennett v. Fidelity Mgmt. & Research Co., et al.*,
Civil Action No. 04-11651-MLW, July 18, 2007 (Docket No. 90) .......................... 7

# INTRODUCTION

Defendants Capital Research and Management Company ("CRMC") and American Funds Distributors, Inc. ("AFD") respectfully submit this memorandum to address certain statements made by the Court in its September 16, 2009 Statement of Intended Decision ("Intended Decision") with respect to the four independent directors who testified at trial, and to bring to the Court's attention certain legal principles that were never before raised in this case, but which bear on the Court's statements.

In its Intended Decision, the Court held "that the unaffiliated directors are sufficiently independent and are able to carefully and conscientiously carry out their responsibilities to the funds." *See* Intended Decision at 23. At the same time, the Court observed that some evidence raised "concerns regarding the independence of some of the unaffiliated directors." *Id.* at 22. One such piece of evidence relied on by the Court was the fact that the testifying directors met with counsel for the Defendants prior to testifying at trial. Relying, in part, upon this conduct, the Court observed that "[i]t seems to the Court that the unaffiliated directors who testified essentially aligned themselves with CRMC and AFD instead of retaining their status as independent third parties in this litigation." *Id.* The Court stated that, as a result, it will "give [ ] less weight" to the testimony of the testifying directors than it otherwise would have given. *Id.*

For the reasons set forth below, Defendants respectfully ask that the Court reconsider its decision to give less weight to the independent directors' testimony because they met with counsel for Defendants prior to trial. Defendants have included (in brackets) footnote 13 in the Proposed Conclusions of Law to address the statements made in the Court's Intended Decision on this issue. However, to the extent the Court agrees with the positions and authority set forth herein,

Gibson, Dunn & Crutcher LLP

Defendants respectfully request that this footnote not be included in the final Conclusions of Law.

## FACTUAL BACKGROUND

While none of the unaffiliated directors of the Funds were ultimately defendants in this case, the complaint was a direct assault on the integrity of the directors, the quality of their work, and the reasonableness of the fee agreements they negotiated and approved on behalf of the Funds' shareholders. For example, in the operative Fourth Amended Complaint ("FAC"), dated May 16, 2008, Plaintiffs alleged that:

- The independent directors "failed to satisfy their duty to independently and conscientiously evaluate the Funds' 12b-1 and advisory fee arrangements, a factor that strongly supports a finding of fee excessiveness." *Id.* ¶ 8; and

- The independent directors "ultimately failed to exercise the requisite care and conscientiousness in performing their statutory duties by approving a course of action suggested by [CRMC] that was of no benefit to the Funds or their investors." *Id.* ¶ 146.

These allegations and others made clear that Plaintiffs were challenging the independent directors' business judgment and alleged failure to act prudently in reviewing and approving the challenged fees.

At trial, in response to questions posed by Plaintiffs' counsel, two unaffiliated directors testified that they met with counsel for the Defendants prior to trial. Mr. Newman testified that he was represented by independent counsel,[1] that independent counsel prepared him for his trial testimony, and that counsel for the Defendants was present for that preparation. Mr. Newman also explained that he met separately with his independent counsel to prepare. *See* Trial Tr. 804:13-806:3; 854:22-855:6. Mr. Pendleton testified that counsel for the Defendants were

---

[1] The independent directors are represented in this action by Thomas Zaccaro, a partner in the Los Angeles office of Paul, Hastings, Janofsky & Walker, LLP.

2

present when he met with his independent counsel to prepare for trial. He, like Mr. Newman, also met separately with his own attorney to prepare for trial. *See id.* 1456:16-1457:11; 1471:20-1472:6.

## **DISCUSSION**

Defendants respectfully submit that when assessing the independence of the directors in a Section 36(b) case, the focus should be on the conduct of the directors at the time they approved the fees, not on the directors' decision to defend their approval of the fees years later in a Section 36(b) trial. At the later date, there are strong reasons why the directors' interests likely would be aligned with management in defending the case. However, Defendants submit that should not impact a court's evaluation of whether the directors acted independently and conscientiously when the fees were approved years earlier.

A core inquiry in an "excessive" fee case under Section 36(b) is the diligence and conscientiousness of the directors when they approved the challenged fees. *See, e.g.*, 15 U.S.C. § 80a-35(b)(2); *Gartenberg v. Merrill Lynch Asset Mgmt., Inc.*, 528 F. Supp. 1038, 1057-64 (S.D.N.Y. 1981), *aff'd*, 694 F.2d 923 (2d Cir. 1982). As noted above, throughout this case, Plaintiffs took the position that the directors did not adequately fulfill their fiduciary duty to the Funds at the time they approved the fees in question, and that the directors were essentially "asleep at the switch."

In this context, it is reasonable for the directors, whose judgment has been attacked, to defend their past decisions. Indeed, those directors who testified said they believed the fees paid by the Funds were reasonable, and they strongly disagreed with the allegations made by the Plaintiffs in this case with respect to whether they adequately performed their duties as directors. The independent directors were accused of wrongdoing and had a strong interest in defending their past conduct and obtaining a ruling from this Court that their decisions were

Gibson, Dunn & Crutcher LLP

reasonable.[2] In that context, the decision of certain independent directors to meet with counsel for the Defendants for purposes of defending their past decisions should not be viewed as a lack of independence when the fees were negotiated.

The situation is similar to a more traditional contract negotiated between two undeniably independent parties. Take the example where two companies enter into a commercial contract after engaging in fierce arm's-length bargaining. If that contract is subsequently challenged by a third party (*e.g.*, in a derivative action by a shareholder of one of the contracting parties to invalidate the contract), both contracting parties may have a strong community of interest in defending the contract. Clearly the fact that both parties' interests align in the joint defense of the contract should not be used to support an inference that the contract was not negotiated at arm's length by two truly independent parties.

The same is true in Section 36(b) cases, where the independent directors' judgment and conscientiousness are routinely attacked. The relevant inquiry should not be whether the attacked directors have a common interest with the adviser in defending their past business judgment to approve the fees (most often, they will). Rather, the relevant inquiry for purposes of the "independence and conscientiousness" factor under *Gartenberg* should be how the directors conducted themselves *at the time* the fees were negotiated.

At closing arguments, the Court appeared troubled by an instance where one of the directors was "adversarial" when the fees were being negotiated, but then

---

[2] Here, because both were being accused of wrongdoing with respect to identical subject matter, the independent directors and Defendants had a community of interest in establishing, among other things, that the services provided to the Funds were of high quality and reasonably priced, that the directors were well informed and acted independently and conscientiously in approving the fees and agreements, and that the decisions made were in the best interest of fund shareholders.

defended his decision to approve the fees years later on the witness stand. As the Court noted:

> The problem with Riggs was Riggs seemed to, in [reading] what I read in the written record, Riggs seemed to ask a lot of questions. When he got on the stand, he seemed to want to distance himself from his written record and to move away from the adversarial posture that is described in some of the more aggressive writings.

Hr'g Tr. 54, Sept. 2, 2009. But this "adversarial posture" is logical and reasonable for an independent director whose diligence has been challenged, especially a director who acted prudently and firmly believes his approval of the fees was proper. *See, e.g., Daily Income Fund, Inc. v. Fox*, 464 U.S. 523, 546 (1984) (Stevens, J., concurring) (recognizing that fund trustees are likely to align themselves with the investment adviser in defending the management contract they negotiated).

With the utmost respect toward the Court, Defendants submit that there is a distinction between independence at the time of fee approval and the time at which an independent director is called to testify in an action challenging his or her business judgment as ill-informed and careless. That independent directors met with defense counsel in this case long after the fees were negotiated, in the context of defending a case challenging their conscientiousness, should not merit an adverse inference. If the record supports a finding that the directors were independent at the time they negotiated the fee agreement, meeting with defense counsel years later, after the litigation was commenced, should not impact that finding.[3]

---

[3] The record supports a finding that, at the time of approving the fees attacked by Plaintiffs, the independent directors were well informed on all material issues, and
[continued]

Gibson, Dunn & Crutcher LLP

Consistent with this, a number of courts have recognized that once a plaintiff attacks the independence of fund directors, the interests of the independent directors and the adviser tend to align, and the law affords protection to that "common interest."[4] Indeed, Defendants are not aware of any precedent to the contrary.

In *Strougo v. BEA Assocs.*, 199 F.R.D. 515 (S.D.N.Y. 2001), for example, fund shareholders claimed that a rights offering constituted a breach of fiduciary duty by the investment adviser and the funds' directors, in part based on allegations that the adviser unduly influenced outside directors. *Id.* at 518. Plaintiffs sought to compel the production of draft board minutes sent by the adviser to the outside directors' counsel, but the court refused to impose such a requirement. The court held that "[t]he disclosure to counsel for the outside directors did not waive the privilege because the outside [fund] directors *have a common interest with the defendant* BEA directors in responding to plaintiff's allegations that the [fund] directors were not independent of" the investment adviser. *Id.* at 525 (emphasis added).

---

[continued]
exercised their business judgment in a manner that they reasonably determined was in the best interests of fund shareholders. As this Court stated, "Defendants presented substantial evidence which supports their claim that the unaffiliated directors are sufficiently independent for purposes of satisfying the *Gartenberg* standard," and the directors were "able to carefully and conscientiously carry out their responsibilities to the funds." Intended Decision at 22-23.

[4] The common interest doctrine protects communications between or among separate clients and their counsel when the clients have common interests in a legal dispute or matter and the communications are part of an on-going and joint effort to carry out a common strategy. *In re Grand Jury Subpoena*, 274 F.3d 563, 572 (1st Cir. 2001). The doctrine is based on the rationale that parties with common interests should be permitted to share information pertinent to each others' legal strategies. *Id.* at 575-76.

Similarly, in *Bennett v. Fidelity Mgmt. & Research Co., et al.*, Civil Action No. 04-11651-MLW (D. Mass), Plaintiffs alleged that a fund manager violated Section 36(b) by charging excessive fees, and claimed that the independence and conscientiousness of independent trustees was lacking. Plaintiffs sought to compel discovery regarding deposition preparation meetings attended by independent directors and the investment adviser's in-house and outside counsel. The court denied such discovery on privilege grounds, holding that "[a]s to the . . . independent trustees' preparation sessions, I find a common interest and therefore discovery relating to the deposition preparation sessions . . . shall not be the subject of discovery." *Bennett v. Fidelity Mgmt. & Research Co., et al.*, Civil Action No. 04-11651-MLW, Tr. of Mot. Hr'g 38-39, July 18, 2007 (Docket No. 90). (A copy of the hearing transcript is attached at Exhibit A to the Declaration of Andrew Z. Edelstein, submitted concurrently herewith.)

Just as in *Strougo* and *Bennett*, once Plaintiffs commenced this litigation alleging that the directors acted improperly in approving the Funds' fees, the interests of the adviser and directors were aligned in defense of those allegations. Recognizing a common interest among the adviser and directors with respect to defending the directors' prior actions is not undermined by the fact that the directors were independent and adverse when the fees were negotiated. Indeed, numerous courts have recognized a community of interest in defending a lawsuit even where the parties have adverse interests with respect to other issues. *See United States v. Bay State Ambulance & Hosp. Rental Serv., Inc.*, 874 F.2d 20, 28 (1st Cir. 1989) ("Communications to an attorney to establish a common defense strategy are privileged even though the attorney represents another client with some adverse interests."); *In re Megan-Racine Assocs.*, 189 B.R. 562, 572 (Bankr. N.D.N.Y. 1995) (in recognizing common interest privilege, courts have not required a total identity of interest among the participants. The privilege applies

when a limited common purpose necessitates disclosure to certain parties."); *Visual Scene, Inc. v. Pilkington Bros.*, 508 So.2d 437, 441 (Fla. Dist. Ct. App. 1987) (holding common interest applies where participants "are antagonistic as to some issues, but united as to others")

In light of this precedent, Defendants respectfully request that the Court reconsider its statement in the Intended Decision that the "directors who testified at trial essentially aligned themselves with CRMC and AFD instead of retaining their status as independent third parties in this litigation." Intended Decision at 22. As the above cases suggest, directors do have an interest in defending their actions at trial when their judgment has been personally attacked.

Moreover, even if the directors did not have a common interest in defending their past decision to approve the fees, it is entirely proper for counsel to meet with "independent" witnesses prior to their trial testimony. Indeed, counsel frequently meet with non-party witnesses before trial. *Skains v. Lockler*, No. Civ. S-06-127, 2009 WL 230037, at *8 (E.D. Cal. Jan. 20, 2009) ("It is, of course, proper for an attorney to meet with a witness in preparation for trial.").

For example, counsel for a defendant in a civil or criminal case involving a car accident may meet with an eyewitness to the critical events before that witness takes the stand. That, however, does not mean the interests of the eyewitness are aligned with the defense. In the same manner, the American Funds directors' status as independent does not mean they should be required to refuse to meet with counsel for the adviser. This is particularly true here because the directors also met privately with their own counsel and the directors' independent counsel was present when they met with counsel for Defendants. *See* Trial Tr. at 804:13-805:24, 854:22-855:6, 1472:2-6.

Finally, an adverse finding as to the credibility of independent directors because they met with counsel for the adviser would have a considerable negative

impact on funds and fund shareholders. Not only is this practice appropriate and protected by law, *see supra*, it is typical in the industry and inures to the significant benefit of fund shareholders. Indeed, this was precisely the practice followed in *Gartenberg, Krinsk*, and other excessive fee cases. Because certain interests are aligned once a litigation under Section 36(b) is commenced, it is not unusual for counsel for an adviser—the entity typically named as the defendant in a Section 36(b) case—to meet with independent directors and their counsel to, among other things: (1) apprise, discuss, and update them with respect to (i) the procedural status of often very lengthy litigation, (ii) the applicable legal standards and any legal developments under Section 36(b), and (iii) the substantive theories advanced by Plaintiffs and any changes to those theories over time; and (2) elicit directors' views regarding the quality of the information they were provided, their decision-making process, the bases for the decisions made, and how those facts fit into the litigation and are best presented at trial. This is particularly the case given that the diligence and conscientiousness of the directors is part of the *Gartenberg* factors.

\* \* \*

In sum, Defendants respectfully submit that the independent directors' testimony should not be discounted because they met with Defendants' counsel in the interests of defending their decision to approve the fees. Such a holding would jeopardize the ability of independent directors to present a fully informed defense at a trial where the appropriateness of their actions is at the heart of the case, and also treads on the common interest privilege that other courts have recognized. Additionally, Defendants believe the negative inference from the purely routine practice of a witness's meeting with trial counsel before testifying is not necessary for the Court's final decision, particularly since the Court finds that overall there was "substantial evidence" that the directors were sufficiently independent and

conscientious in their approval of the fees at issue. See Intended Decision at 22-23.

## CONCLUSION

For the foregoing reasons, Defendants respectfully submit that the fact that defense counsel met with some of the independent directors prior to trial should not have a negative impact on the weight of their testimony and respectfully request that footnote 13 of the Proposed Conclusions of Law not be included in the Court's ultimate findings in this action.

DATED: October 2, 2009

Respectfully submitted

GIBSON, DUNN & CRUTCHER LLP
GARETH T. EVANS
ANDREW Z. EDELSTEIN


By: _____/s/ Gareth T. Evans_____
    Gareth T. Evans

MILBANK, TWEED, HADLEY &
 McCLOY LLP
JAMES N. BENEDICT
SEAN M. MURPHY
JAMES G. CAVOLI


By: _____[signature] James N. Benedict/Ase_____
    James N. Benedict

Attorneys for Defendants
 Capital Research and Management Company and
 American Funds Distributors, Inc.